**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ELLEN MOSER, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>THE J. M. SMUCKER COMPANY, an Ohio corporation; THE FOLGER COFFEE COMPANY, an Ohio corporation; and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No. 1:20-cv-7074<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Ellen Moser ("Plaintiff"), on behalf of herself and all others similarly situated, bring this class action against Defendants The J. M. Smucker Company, The Folger Coffee Company, and Does 1 through 50 (collectively, "Defendants"), based on Defendants' false and deceptive advertising and labeling of their Folgers ground coffee products. Plaintiff makes the following allegations based on the investigation of their counsel and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on her personal knowledge.

## INTRODUCTION

1.      This case revolves around a straightforward and systematic course of false, misleading, and unlawful conduct: Defendants have grossly exaggerated the number of cups of coffee that the Folgers ground coffee products can make in order to induce consumer purchases and to charge consumers more for these products.

2.      Throughout the statute of limitations period, Defendants have sold the Folgers ground coffee products to consumers based on the representation that they contain enough ground

coffee to make up to a specific number of servings (e.g., "240 6 fl oz cups"). However, by following Defendants' own definitions and instructions, the Folgers ground coffee products do not contain nearly enough ground coffee to make the number of servings represented.

3.      Indeed, it is a classic and unlawful bait-and-switch scheme that causes unsuspecting consumers to spend more money for less than the advertised amount of coffee they believe they are purchasing.

4.      Plaintiff and other consumers purchased the Folgers ground coffee products because they reasonably believed – based on Defendants' representations—that these products contained enough coffee to make the specified number of servings. Had Plaintiff and other consumers known the truth (i.e., that the Folgers ground coffee products do not contain enough coffee to make the specified number of servings), they would have paid less for them, or would not have purchased them at all. As a result, Plaintiff and other consumers have been deceived and have suffered economic injury.

5.      Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendants' falsely and deceptively labeled Folgers ground coffee products during the statute of limitations period, for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, N.Y. Gen. Bus. Law §§ 349 & 350, and for breach of express and implied warranty, intentional and negligent misrepresentation, unjust enrichment, and for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, there are thousands of proposed Class members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and Defendants are citizens of a state different from at least some members of the proposed Class, including Plaintiff.

7.      This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts in Illinois, or otherwise intentionally avail themselves of the markets within Illinois, through their sale of the Products in Illinois and to Illinois consumers.

8.      Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in this District and she purchased the Product in this District.

## THE PARTIES

9.      Plaintiff Ellen Moser is a citizen of the United States and the State of Illinois and she currently resides in Lake County, Illinois. In February 2020, Plaintiff purchased the Folgers Classic Roast, 30.5 oz product from Walmart in Antioch, Illinois, for her own personal benefit. Plaintiff paid approximately $6.96 for the Product. In purchasing the Product, Plaintiff saw and relied on Defendants' representations made on the packaging. Specifically, Plaintiff reasonably believed that the Folgers Classic Roast product contained enough ground coffee to make 240 cups or servings because she saw the representation "MAKES UP TO 240 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff's reasonable belief that the Product she purchased could make the represented number of servings was an important factor in her decision to purchase the products. Plaintiff would have paid significantly less for the Product had she known that the

3

Product did not contain enough ground coffee to make the represented number of cups of coffee. Therefore, Plaintiff suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as described herein.

10. Despite being misled by Defendants with respect to the Folgers ground coffee products they purchased, Plaintiff lacks personal knowledge as to Defendants' specific business practices. Consequently, there is still doubt in her mind as to the possibility that some of the Folgers ground coffee products could contain enough coffee to make the advertised number of servings. For example, because there are several Folgers ground coffee products involved in Defendants' deceit, and due to the likelihood that Defendants may yet develop and market additional coffee products that misrepresent the serving yield, Plaintiff may again purchase a falsely-advertised ground coffee product from Defendants under the mistaken impression that the represented number of servings is accurate. Moreover, Class members will continue to purchase the Folgers ground coffee products, reasonably but incorrectly believing that they contain enough coffee to make the advertised number of servings.

11. Plaintiff is also susceptible to reoccurring harm in that she desires to continue to purchase Folgers ground coffee products but cannot be certain Defendants have corrected their deceptive and false advertising scheme. Indeed, Plaintiff regularly shops at stores where Folgers ground coffee products are sold, and she would like to continue purchasing Folgers ground coffee products because she likes the taste. However, she currently cannot trust that Defendants will label and/or advertise the Folgers ground coffee products they purchased in the past truthfully and in compliance with applicable law.

12. The J. M. Smucker Company is a corporation organized and existing under the laws of the state of Ohio, with its headquarters and principal place of business at One Strawberry Lane,

Orrville, OH 44667. The J. M. Smucker Company is one of the world's biggest packaged goods companies and it owns the Folgers brand.

13.     The Folger Coffee Company is a corporation organized and existing under the laws of the state of Ohio, with its headquarters and principal place of business at One Strawberry Lane, Orrville, OH 44667. Folgers has a rich history dating back to 1850 and is arguably the most well-known coffee maker in the United States. The coffee giant excels in offering a wide range of products to customers, including varying flavors, roasts and strength of coffee. Beginning in 1850 in San Francisco, Folgers is now a household name recognized and sold around the world Since the early 1990s, it has been the largest-selling ground coffee in the United States. In the 1980s, Folgers' slogan "The best part of waking up is Folgers in your cup!" and the well-associated jingle became recognizable in households across the country, along with the Folgers name. Folgers generates millions of dollars in sales each year, a significant portion of which is derived from sales of the Products in California. In 2008, Folgers was acquired by The J. M. Smucker Company from Procter & Gamble for a reported $3 billion.

14.     The true names and capacities of Does 1 through 50, inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues such Doe defendants under fictitious names. Upon information and belief, each Defendant designated as a Doe is in some manner highly responsible for the occurrences alleged herein, and Plaintiff and Class members' injuries and damages, as alleged herein, were proximately caused by the conduct of such Doe defendants. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of such Doe defendants when ascertained.

## FACTUAL ALLEGATIONS

**A.      The Folgers Ground Coffee Products At Issue**

15.      The products at issue in this case consist of all varieties (e.g., different types of roasts) and sizes (e.g., 20 oz., 30.5 oz., etc.) of Folgers ground coffee canisters.

16.      These products (hereinafter collectively referred to as the "Products") include but are not limited to the following varieties of Folgers ground coffee canisters: Classic Roast; Classic Roast Decaf; ½ Caff; CoffeeHouse Blend; Country Roast; Simply Smooth; Simply Smooth Decaf; 100% Colombian; Black Silk; Black Silk Decaf; Brazilian Blend; Breakfast Blend; French Roast; Gourmet Supreme; House Blend; and Special Roast.

17.      The Products are sold across the United States through third party retailers including grocery chains and large retail outlets.

**B.      Defendants Grossly Overstate The Number Of Servings The Products Can Make**

18.      Defendants represent on the packaging of each of the Products that they contain enough ground coffee to make up to a specified number of servings. For example, Defendants prominently state on the front canister of the 30.5 oz. canister of Folgers Classic Roast Coffee: "MAKES UP TO 240 6 FL OZ CUPS."

19.      Representative images of the front of the canisters of some of the Products are depicted below:

6













20.     Defendants place a materially identical representation on the front label of all the Products, although the number of represented servings of course varies based on the size of the Product.

21.     On the back of all the Products, Defendants instruct consumers that they should use 1 tablespoon of ground coffee to make 1 serving/cup of coffee.[1]

22.     One tablespoon of ground coffee weighs approximately 5 grams.

23.     Based on these standard measurements, it is evident that Defendants grossly overstate the number of servings the Products can make.

24.     By way of example, Defendants represent on the 30.5 oz. canister of the Folgers Classic Roast that it "MAKES UP TO 240 6 FL OZ CUPS."

25.     As set forth above, one tablespoon of ground coffee is needed to make 1 serving. Therefore, 240 tablespoons of ground coffee are needed to make 240 servings.

26.     As set forth above, one tablespoon of ground coffee = approximately 5 grams. Therefore, 1200 grams of ground coffee is needed to make 240 servings [240 tablespoons x 5 grams].

27.     However, the 30.5 oz. canister has a net weight of 865 grams. Therefore, it contains only 72% of the amount of ground coffee required to make up to 240 cups of coffee [865 / 1200 x 100%]. This is equivalent to approximately 173 cups of coffee.

28.     The same shortfall (i.e., only 173 cups of coffee) is calculated by dividing the total grams of coffee in the 30.5 oz. cannister by the number of grams required to make a single serving [865 grams / 5 grams].

---

[1] Hereinafter, the term "cup" is synonymous, and used interchangeably with, the term "serving." Moreover, the term "cup" or "serving" is equivalent to 6 fluid ounces, based on Defendants' representations.

29.     In sum, the 30.5 oz. canister only contains enough coffee to make 173 cups, which is equivalent to 72% of the amount of ground coffee that is required to make the 240 cups of coffee:

- 865 grams / 1200 grams = 72%

- 173 cups / 240 cups = 72%

30.     Thus, it is impossible for the Product to contain enough ground coffee to make anywhere close to 240 cups of coffee. Defendants' representation that the 30.5 oz. canister "MAKES UP TO 240 6 FL OZ CUPS" is therefore false, deceptive, and misleading.

31.     The same calculations apply equally to all of the other Products. According to their net weight, as well as the weight per tablespoon of ground coffee, they are unable to make anywhere close to the represented number of cups. These calculations are set forth in the following chart:

| Product Name | Net Weight | Number of "Up To" Servings Promised | Approximate Number of Servings Received | Approximate Percentage of Servings Received |
|---|---|---|---|---|
| Classic Roast | 11.3 oz. | 90 | 64 | 71.1% |
| Classic Roast | 22.6 oz. | 180 | 128 | 71.1% |
| Classic Roast | 30.5 oz. | 240 | 173 | 72.0% |
| Classic Roast | 38.4 oz. | 305 | 216 | 70.8% |
| Classic Roast | 48 oz. | 380 | 272 | 71.6% |
| Classic Roast | 51 oz. | 400 | 288 | 72% |
| Classic Decaf | 11.3 oz. | 90 | 64 | 71.1% |
| Classic Decaf | 22.6 oz. | 180 | 128 | 71.1% |
| Classic Decaf | 30.5 oz. | 240 | 173 | 72.0% |
| Classic Decaf | 33.9 oz. | 270 | 192.2 | 71.2% |
| 1/2 Caff | 10.8 oz. | 90 | 61.2 | 68% |
| 1/2 Caff | 25.4 oz. | 210 | 144 | 68.6% |
| CoffeeHouse Blend | 10.8 oz. | 90 | 61.2 | 68% |
| CoffeeHouse Blend | 25.4 oz. | 210 | 144 | 68.6% |
| Country Roast | 25.1 oz. | 240 | 142.2 | 59.3% |
| Country Roast | 31.1 oz. | 240 | 176.4 | 73.5% |

| Product Name | Net Weight | Number of "Up To" Servings Promised | Approximate Number of Servings Received | Approximate Percentage of Servings Received |
|---|---|---|---|---|
| Simply Smooth | 11.5 oz. | 90 | 65.2 | 72.4% |
| Simply Smooth | 23 oz. | 180 | 130.4 | 72.4% |
| Simply Smooth | 31.1 oz. | 240 | 176.4 | 73.5% |
| Simply Smooth | 34.5 oz. | 270 | 195.6 | 72.4% |
| Simply Smooth Decaf | 11.5 oz. | 90 | 65.2 | 72.4% |
| Simply Smooth Decaf | 23 oz. | 180 | 130.4 | 72.4% |
| 100% Colombian | 10.3 oz. | 90 | 58.4 | 64.9% |
| 100% Colombian | 24.2 oz. | 210 | 137.2 | 65.3% |
| Black Silk | 10.3 oz. | 90 | 58.4 | 64.9% |
| Black Silk | 24.2 oz. | 210 | 137.2 | 65.3% |
| Black Silk Decaf | 10.3 oz. | 90 | 58.4 | 64.9% |
| Black Silk Decaf | 20.6 oz. | 180 | 116.8 | 64.9% |
| Brazilian Blend | 10.3 oz. | 90 | 58.4 | 64.9% |
| Brazilian Blend | 24.2 oz. | 210 | 137.2 | 65.3% |
| Breakfast Blend | 10.8 oz. | 90 | 61.2 | 68% |
| Breakfast Blend | 25.4 oz. | 210 | 144 | 68.6% |
| French Roast | 10.3 oz. | 90 | 58.4 | 64.9% |
| French Roast | 24.2 oz. | 210 | 137.2 | 65.3% |
| Gourmet Supreme | 10.3 oz. | 90 | 58.4 | 64.9% |
| Gourmet Supreme | 24.2 oz. | 210 | 137.2 | 65.3% |
| House Blend | 10.3 oz. | 90 | 58.4 | 64.9% |
| House Blend | 24.2 oz. | 210 | 137.2 | 65.3% |
| Special Roast | 10.3 oz. | 90 | 58.4 | 64.9% |
| Special Roast | 24.2 oz. | 210 | 137.2 | 65.3% |

32.     There are 40 varieties of the Products listed in the chart above. Each and every one of them contains substantially less ground coffee than is required to make the recommended number of "up to" servings promised on the packaging. On average, these Products contain enough ground coffee to make only 68.33% of the number of servings promised on the packaging, thus revealing a systematic course of unlawful conduct by Defendants to deceive and shortchange consumers.

12

**C.**    **The False And Deceptive Serving Amount Representation Harms Consumers**

33.    Plaintiff and other consumers purchased the Products relying on Defendants' serving amount representations on the Products' packaging.

34.    Plaintiff and other consumers reasonably expect that, if serving instructions are followed, the Products will produce the number of servings/cups of coffee as represented on the Products' packaging.

35.    Plaintiff's and consumers' reasonable belief that the Products are able to make up to the represented number of cups of coffee was a significant factor in each of their decisions to purchase the Products.

36.    Plaintiff and Class members did not know, and had no reason to know, that the Products' labeling vastly overstates the number of cups of coffee they are able to make. At the time of purchase, a reasonable consumer cannot measure or calculate how many servings the Products can make. Nor are reasonable consumers expected to keep track of the precise number of cups of coffee they make over a period of time.

37.    As the entity responsible for the development, manufacturing, packaging, advertising, distribution and sale of the Products, Defendants knew or should have known that each of the Products falsely and deceptively overstates the number of servings of coffee that can be made.

38.    Defendants also knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on Defendants' serving size representations. Nonetheless, Defendants deceptively advertise the Products in order to deceive consumers into believing they are getting considerably more coffee than they are paying for.

39.    Consumers are willing to pay more for the Products based on the belief that the Products contain enough ground coffee to make up to the represented number of servings. Plaintiff

13

and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known that they were getting fewer servings of coffee than what they were promised.

40.     By analogy, if a consumer purchased a six-pack of soda, but only received four cans of soda, the consumer would only be receiving 66.67% of what she paid for. The situation here is no different in terms of the harm to the consumer. The only difference is that, due to the nature of the Products, Defendants are able to conceal the gross shortfall of coffee because reasonable consumers do not keep track of the number of cups of coffee they make over a period of time.

41.     Therefore, Plaintiff and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendants' false and deceptive practices, as described herein.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this class action pursuant to Fed. R. Civ. P 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Class of Illinois consumers:

All persons who purchased any of the Products in the state of Illinois within the applicable statute of limitations period.

43.     Excluded from the Class are the following individuals and/or entities: Defendants and their parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

44.     Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or add subclass(es) before the Court determines whether certification is appropriate.

45.     <u>Numerosity</u>: The proposed Class is so numerous that joinder of all members would be impractical. The Products are sold throughout the States of California and New York, and the United States, by third-party retailers. The number of individuals who purchased the Products during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

46.     <u>Common Questions Predominate</u>: There are questions of law and fact common to the proposed Class that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

a.     Whether Defendants misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

b.     Whether Defendants' use of false or deceptive packaging and advertising constituted false or deceptive advertising;

c.     Whether Defendants engaged in unfair, unlawful and/or fraudulent business practices;

d.     Whether Defendants' unlawful conduct, as alleged herein, was intentional and knowing;

e.     Whether Plaintiff and the Class are entitled to damages and/or restitution, and in what amount;

f.     Whether Defendants are likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

g.     Whether Plaintiff and the Class are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

47.     Defendants have engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff and Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Class flow, in each instance, from a common nucleus of operative fact, namely, Defendants' deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as each of the Products: (a) bear the materially same serving amount representations, and (b) do not contain enough ground coffee to make anywhere close to the represented serving amount. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

48.     Superiority: Because of the relatively small amount of damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

49.     Typicality: The representative Plaintiff's claims are typical of those of the proposed Class, as all members of the proposed Class are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

50.     Adequacy: Plaintiff will fairly and adequately protect the interests of the proposed Class as their interests do not conflict with the interests of the members of the proposed Class they seek to represent, and they have retained counsel competent and experienced in class action litigation. The interests of the members of the Class will be fairly and adequately protected by the Plaintiff and counsel.

51.     Defendants have also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Class, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

## FIRST CLAIM FOR RELIEF

### Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act
### (815 ILCS § 505/1, et seq.)

52.     Plaintiff repeats the allegations contained in paragraphs 1-51 above as if fully set forth herein.

53.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS §§ 505/1, *et seq*., provides protection to consumers by mandating fair competition in commercial markets for goods and services.

54.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS § 505/2.

55.     The ICFA applies to Defendant's acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

56.     Defendants are a "person" as defined by section 505/1(c) of the ICFA. The Plaintiff and each member of the Class are "consumers" as defined by section 505/1(e) of the ICFA. The Products are "merchandise" under the meaning of section 505/1(b) and its sale is within the meaning of "trade" or "commerce" under the ICFA.

57.     Defendants have represented and continue to represent to the public, including Plaintiff and members of both Class, through its deceptive packaging, that the Products contain enough ground coffee to make substantially more servings than they can actually make. Because Defendants have disseminated misleading information regarding the Products, and Defendants know, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendants have violated the IFCA.

58.     At all relevant times, Defendants have known or reasonably should have known that the Products did not contain enough ground coffee to make the represented number of servings, and that Plaintiff and other members of the Class would reasonably and justifiably rely on the packaging in purchasing the Products. Plaintiff is therefore informed and believes and thereon alleges that Defendants' false and misleading statements set forth above were made knowingly and intentionally, with the intent to mislead Plaintiff and the Class.

59.     Plaintiff and members of the Class have justifiably relied on Defendants' misleading representations when purchasing the Products. Moreover, based on the materiality of Defendants' misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of the Class.

60.     Defendant's misrepresentations and omissions regarding the amount of ground coffee contained in the Products were acts likely to mislead the Plaintiff and the members of the Class acting reasonably under the circumstances, and thus constitute unfair and deceptive trade practices in violation of ICFA.

61.     Plaintiff and members of the Class have suffered and continue to suffer injuries caused by Defendants because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products contain substantially less ground coffee to make the promised number of servings. As a result, Defendants have and continue to unlawfully obtain money from Plaintiff and members of the Class.

62.     Plaintiff, on behalf of herself and the Class, seeks an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to correct their marketing and advertising messages on Folgers ground coffee canister products to adequately disclose the material facts regarding the actual number of servings a Product will yield according to the Product's brewing instructions (otherwise, Plaintiff and Class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted);(3) awarding damages, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable; and/or (4) requiring Defendant to restore to Plaintiff and each Class member this unlawfully obtained money from them, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the ICFA or violating it in the same fashion in the future as discussed herein.

<u>**SECOND CLAIM FOR RELIEF**</u>

**Violation of the Illinois Uniform Deceptive Trade Practices Act**
**(815 ILCS 510/1, et seq.)**

63.     Plaintiff repeats the allegations contained in paragraphs 1-51 above as if fully set forth herein.

64.     At all times relevant hereto, there was in full force and effect the Illinois Uniform Deceptive Practices Act, 815 ILCS 510/1, *et seq*. ("DTPA").

65.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant pursuant to the DTPA.

66.     815 ILCS 510/2(a)(5) prohibits "represent[ng] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or  quantities which they do not have …" By marketing the Products with their current packaging, Defendants have represented and continue to represent that the Products have characteristics (i.e., contain enough ground coffee to make up to a specified  number of servings) that they do not have. Therefore, Defendants have violated section 510/2(a)(5) of the DTPA.

67.     815 ILCS 510/2(a)(7) prohibits "represent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Products with their current packaging, Defendants have represented and continue to represent that the Products are of a particular standard (i.e., contain enough ground coffee to make up to a certain number of servings) which they do not possess. Therefore, Defendants have violated section 510/2(a)(7) of the DTPA.

68.     815 ILCS 510/2 (a)(9) prohibits "advertis[ing] goods or services with intent not to sell them as advertised." By marketing the Products as containing enough ground coffee to make a

specified number of servings, but not intending to sell the Products as such, Defendants have violated section 510/2(a)(9) of the DTPA.

69.     815 ILCS 510/2 (a)(12) prohibits "engag[ing] in any other conduct which similarly creates a likelihood of confusion or misunderstanding." By marketing the Products with their current packaging as containing enough ground coffee to make a specified number of servings which they do not contain, Defendants have engaged and continued to engage in conduct which is likely to create confusion or misunderstanding among consumers. Therefore, Defendants have violated section 510/2(a)(12) of the DTPA.

70.     The above-described deceptive and unfair acts and practices were used or employed in the course of trade or commerce—namely, the sale of Folgers ground coffee canisters to Plaintiff and members of the Class.

71.     At all relevant times, Defendants have known or reasonably should have known that the Products did not contain enough ground coffee to make the represented number of servings, and that Plaintiff and  other members of the Class would reasonably and justifiably rely on the packaging in purchasing the Products. Plaintiff is therefore informed and believes and thereon alleges that Defendants' false and misleading statements set forth above were made knowingly and intentionally, with the intent to mislead Plaintiff and the Class.

72.     Plaintiff and members of the Class have justifiably relied on Defendants' misleading representations when purchasing the Products. Moreover, based on the materiality of Defendants' misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of the Class.

73.     Defendant's misrepresentations and omissions regarding the amount of ground coffee contained in the Products were acts likely to mislead the Plaintiff and the members of the

Class acting reasonably under the circumstances, and thus constitute unfair and deceptive trade practices in violation of DTPA. Thus, the above-described deceptive and unfair acts offend public policy.

74.     Plaintiff and members of the Class have suffered and continue to suffer injuries caused by Defendants because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products contain substantially less ground coffee to make the promised number of servings. As a result, Defendants have and continue to unlawfully obtain money from Plaintiff and members of the Class.

75.     Plaintiff, on behalf of herself and the Class, seeks an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to correct their marketing and advertising messages on Folgers ground coffee canister products to adequately disclose the material facts regarding the actual number of servings a Product will yield according to the Product's brewing instructions (otherwise, Plaintiff and Class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted);(3) awarding damages, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable; and/or (4) requiring Defendant to restore to Plaintiff and each Class member this unlawfully obtained money from them, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the DTPA or violating it in the same fashion in the future as discussed herein.

### THIRD CLAIM FOR RELIEF

### Quasi Contract/Unjust Enrichment/Restitution

76.     Plaintiff repeats the allegations contained in paragraphs 1-51 above as if fully set forth herein.

77.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

78.     As alleged herein, Defendants have intentionally and recklessly made misleading representations to Plaintiff and members of the Class to induce them to purchase the Products. Plaintiff and members of the Class have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendants. Plaintiff and members of the Class therefore have been induced by Defendants' misleading and deceptive representations about the Products, and paid more money to Defendants for the Products than they otherwise would and/or should have paid.

79.     Plaintiff and members of the Class have conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiff and members of the Class.

80.     The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Class – i.e., Plaintiff and members of the Class did not receive the full value of the benefit conferred upon Defendants.

81.     Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit, or compensation conferred upon them without paying Plaintiff and the members of the Class back for the difference of the full value of the benefits compared to the value actually received.

82.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the Class are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully pray for following relief:

A.     Certification of this case as a class action on behalf of the Class defined above, appointment of Plaintiff as Class representative, and appointment of her counsel as Class counsel;

B.     A declaration that Defendants' actions, as described herein, violate the claims described herein;

C.     An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including, *inter alia*, an order prohibiting Defendants from engaging in the unlawful act described above;

D.     An award to Plaintiff and the proposed Class of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the proposed Class as a result of its unlawful, unfair and fraudulent business practices described herein;

E.     An award of all economic, monetary, actual, consequential, compensatory, and treble damages caused by Defendant's conduct;

F.     An award of punitive damages;

G.     An award to Plaintiff and her counsel of their reasonable expenses and attorneys' fees;

H.     An award to Plaintiff and the proposed Class of pre- and post- judgment interest, to the extent allowable; and

I.     For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Class, hereby demand a jury trial with respect to all issues triable of right by jury.

Dated: November 30, 2020        **CARLSON LYNCH LLP**

By:   */s/ Katrina Carroll*

Katrina Carroll
kcarroll@carlsonlynch.com
Kyle Shamberg
kshamberg@carlsonlynch.com
111 W. Washington St., Ste. 1240
Chicago, Illinois 60602
Tel.:   (312) 750-1265
Fax:   (412) 231-0246

**CARLSON LYNCH LLP**
Todd D. Carpenter (234464)
tcarpenter@carlsonlynch.com
Scott G. Braden (305051)
sbraden@carlsonlynch.com
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.:   (619) 762-1900
Fax:   (619) 756-6991

*Attorneys for Plaintiff*
*and the Putative Class*